UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 2 8 2018 ★

BROOKLYN OFFICE

----------------------------------------------------------------- X

DANIEL VASQUEZ,

                 Petitioner,

          – against –

DARWIN LACLAIR, SUPERINTENDENT OF
FRANKLIN CORRECTIONAL FACILITY,

                 Respondent.

----------------------------------------------------------- :
                                         X

**MEMORANDUM DECISION AND
ORDER**

13-cv-07136 (AMD)

**ANN M. DONNELLY**, District Judge.

      The petitioner, Daniel Vasquez, seeks a writ of habeas corpus pursuant to 28 U.S.C. §

2254. The petitioner was convicted in New York Supreme Court, Queens County, of Attempted

Robbery in the First Degree, Criminal Possession of a Weapon in the Third Degree, and

Menacing in the Second Degree, and was sentenced to concurrent prison sentences totaling ten

years, and five years' post-release supervision. The petitioner challenges his conviction under

the Fifth, Sixth, and Fourteenth Amendments. Specifically, he asserts that the prosecutor failed

to disclose favorable evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963), and that he

was denied the effective assistance of counsel. In addition, the petitioner claims that certain

identification testimony violated New York Criminal Procedure Law § 60.25, that the

prosecutor's comments in summation were unfairly prejudicial, and that the prosecutor failed to

provide sufficient notice of identification testimony under CPL § 710.30. For the reasons that

follow, the petition is denied.

# FACTUAL BACKGROUND[1]

1. Overview

The petitioner's conviction arose out of the attempted knifepoint robbery of Gabriel Garcia. On July 4, 2007, at around 9:30 p.m., Garcia, was walking on Madison Street in Queens when the petitioner approached him, pointed an eight-inch knife at him, and demanded money. Garcia ran into the furniture store where he worked and called 911; when the police arrived about ten minutes later, the petitioner was still outside the store, waiting for Garcia to come out. As soon as the officers arrived, the petitioner walked up the block to the corner of Madison Street and Cypress Avenue. Garcia, who came out, saw the petitioner pull the knife out of his waistband and throw it near a tree. He pointed at the petitioner and told the officers that the petitioner tried to rob him. The officers apprehended the petitioner, and Officer Brian Herbert brought the petitioner back to where Garcia was standing, and asked Garcia if he was sure whether the petitioner was the perpetrator. Garcia confirmed that the petitioner was the man who tried to rob him, and showed them where the petitioner had thrown the knife. The officers arrested the petitioner, and one of the officers recovered the knife. When Officer Herbert told the petitioner that he was under arrest for robbery, the petitioner responded that he did not rob the victim and that he was just asking for money.

The petitioner was charged with Attempted Robbery in the First Degree, Menacing in the Second Degree, and Criminal Possession of a Weapon in the Third and Fourth Degrees. The petitioner testified before the grand jury and denied threatening Garcia with a knife. He testified that he asked "a gentleman" for money to buy a slice of pizza, and that the man interpreted his request as a threat.

---

[1] Because the petitioner was convicted, I summarize the facts in the light most favorable to the verdict. *Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

2

2. Pre-Trial Suppression Hearing

The prosecutor served the petitioner a notice of intent to offer identification testimony

pursuant to CPL section 710.30(1)(b). The notice provided: "The People intend to offer at trial

testimony of a witness [the victim, Gabriel Garcia], who identified the defendant in a Pointout,

on July 4, 2007, at approximately 10:08 p.m., at Cypress Avenue and Madison Street." *People v.*

*Vasquez*, 20 N.Y.3d 461, 464 (2013). The notice did not say anything about a confirmatory

identification once the petitioner was in police custody. (*Id.*)

The petitioner moved to suppress evidence of the victim's identification, as well as the

petitioner's post-arrest statements to the police; the petitioner argued that the pretrial

identification procedure was unduly suggestive and the product of an unlawful arrest, and that

his statements were taken in violation of his constitutional rights. (ECF No. 17-4, at 110-15.)

On September 25, 2007, Judicial Hearing Officer Joan O'Dwyer conducted a suppression

hearing, at which one of the arresting officers, Officer Herbert, testified.[2]

Officer Herbert testified that on July 4, 2007, at approximately 10:00 p.m., he received a

radio call of a knifepoint robbery at the corner of Madison Street and Cypress Avenue in Queens,

and that the male Hispanic perpetrator was still at the location. (H. 4:14-20; 9:5-14.) When

Officer Herbert and his partner, Officer Witherspoon, arrived at the scene, Officer Herbert

radioed the dispatcher to have the complainant come outside. (H. 10:10-11:9.) Garcia came

"running out" of the furniture store at 790 Cypress Avenue, and waved the officer down. (H.

4:23-5:5.) Garcia waved his hands, and pointed at the petitioner, yelling "That's him, that's

him." (H. 4:23-5:17; 12:12-19.) There was no one else on the street. (H. 5:21-23.) Officers

Herbert and Witherspoon stopped the petitioner at the corner of Cypress Avenue and Madison

---

[2] Parenthetical references preceded by "H" are to the hearing minutes of the suppression hearing.

Street, and patted him down for weapons.[3] (H. 6:1-6; 15:2-5; 21:1-3.) Other officers eventually arrived at the scene, and Officer Herbert went back to speak to Garcia. (H. 6:3-10.)

Garcia told Officer Herbert that he was leaving the store to visit a friend when the petitioner threatened him with a long knife and demanded money. (H. 18:7-19:20.) Garcia ran back into the store, locked the door behind him, and called 911. (*Id.*) After his conversation with Garcia, Officer Herbert arrested the defendant.[4] (H. 19:21-24.)

After the suppression hearing, Judicial Hearing Officer O'Dwyer recommended that the petitioner's suppression motion be denied. (ECF No. 17-4, at 110-15.) Judge Richard Buchter adopted the report on October 18, 2007, and denied the motion in its entirety. (ECF No. 17-4, at 109.)

3. Trial

The trial commenced on January 7, 2008 before Judge Buchter and a jury.

a. *The Prosecution's Case*

i. *Gabriel Garcia*[5]

On July 4, 2007, Gabriel Garcia worked at a furniture store on 790 Cypress Avenue until closing, between 7:00 and 8:00 p.m. (T. 275:6-23.) He stayed at the store, and watched a soccer game on television with friends until 9:30 p.m., when he walked his daughter to her mother's house at Wyckoff Avenue and Bleecker Street. (T. 275:7-276:16.) As Garcia walked back to the store, he sensed someone following him. (T. 277:15-24.) He turned around, and saw a young man on his right side. (*Id.*) The man, whose shirt covered his head and cheeks, pointed a

---

[3] Officer Herbert identified the petitioner as the man to whom Garcia pointed. (H. 5:6-14.)

[4] As Officer Herbert was placing the petitioner in his patrol car, the petitioner asked why he was under arrest. When Officer Herbert responded that he was being arrested for robbery, the petitioner said that he "didn't rob anybody," and was "just asking for money for food." (H. 6:11-20; 20:7-14.)

[5] Gabriel Garcia testified with the assistance of a Spanish translator.

knife—approximately eight inches long—at Garcia and told Garcia that he needed money. (T. 278:2-280:8; 292:2-25.) Garcia ran into the furniture store, called 911, and reported that a man had tried to rob him with a knife. (T. 280:20-282:5.) Meanwhile, his assailant paced around in front of the store. (T. 281:19-282:16.) He was still there when the police arrived. (*Id.*) Garcia came out of the store, and saw the perpetrator take the knife from his waistband, and throw it near a tree about ten to twelve feet away from Garcia. (T. 285:1-286:2.) As the perpetrator walked away around the corner, Garcia told the officers to "get him, catch him." (T. 285:1-4.) Garcia lost sight of the perpetrator after he turned the corner on Madison Street, and did not accompany the officers to find the perpetrator after he lost sight of him. (T. 305:7-14; 308:20-25.)

The officers apprehended the man who tried to rob him approximately eight to ten minutes after the attempted robbery; Garcia confirmed that the person the officers apprehended was the same person who had threatened him at knifepoint. (T. 287:1-288:2.) He also told the officers that the man had tried to rob him with a knife, and that he threw his knife away near a tree. (T. 286:20-288:11.) At the trial, Garcia was asked if he saw his assailant in the courtroom; Garcia replied that he could not "recognize exactly that's him," and that he was "not sure" because the robbery happened six months earlier. (T. 281:4-9; 287:12-17.)

ii. *Officer Brian Herbert*

At about 10:00 pm, on July 4, 2007, Officer Brian Herbert and his partner were in a marked patrol car when they received a radio call reporting a robbery at Madison Avenue and Cypress Street. (T. 244:14-245:7.)[6] They arrived at the location about a minute later. (T. 245:7-23.) The street was well-lit, and the lighting conditions were "bright enough to see all around the

---

[6] Parenthetical references preceded by "T." are to the transcript of the trial.

street." (T. 246.) Garcia came out of the furniture store at 790 Cypress Avenue, and waved his arms at him. (Tr. 246:23-247:11.) Officer Herbert spoke to Garcia, and saw the petitioner standing at the corner of Cypress Avenue and Madison Street, about 25 to 30 feet away from Garcia. (T. 248:10-249:10; 265:13-19.) Officer Herbert stopped the petitioner, who was wearing black shorts, brown sneakers, and a tank top of "unknown color." (T. 248:10-249:10; 263:7-266:9.)

After a second conversation with Garcia, Officer Herbert arrested the petitioner. (T. 249:11-250:6.) Garcia pointed to a knife near a tree that was about ten to fifteen feet north of 790 Cypress Avenue; Officer Herbert picked it up and vouchered it. (T. 250:7-252:24; T. 251:9-19.)

     iii. *911 Call*

The prosecutor played the recording of Garcia's call to 911. Because portions of the tape were in Spanish, the jurors were given a translation. (T. 317:17-318:16.)[7] According to the translation, Garcia told the 911 operator that a Hispanic male "tried to rob [him] with a big knife outside," that he had a "big, huge knife," and that the perpetrator was "outside" of the store. (ECF No. 17-3, at 118-19.)

     iv. *Recall of Officer Herbert*

Because Garcia could not make an in-court identification, the prosecutor moved pursuant to CPL § 60.25 to recall Officer Herbert to testify about the circumstances of Garcia's on-the-scene identification. (T. 318:19-3.) The petitioner's lawyer objected that the prosecutor had not

---

[7] The petitioner's lawyer had objected that one sentence of the translation—"he's with a knife, he's with a knife"—was a mistranslation. (T. 224:17-225:8; 237:19-241:13.) Judge Buchter deleted the sentence from the translation, and corrected the transcript so that it read: "Operator: And where are you at this moment? Mr. Garcia: The police went by, the police went by, and they are there." (*Id.*) Neither party objected to this correction. (*Id.*) During the trial, the petitioner's lawyer questioned the accuracy of two additional sections of the translation, and the translation was corrected again. (T. 271:15-272:12.)

6

met the requirements of CPL § 60.25. (Tr. 320:15-321:16.) Judge Buchter overruled the objection, ruling that Garcia's inability to make an in court identification was due to a failure of memory, and that this satisfied CPL § 60.25. (*Id.*)

Officer Herbert testified that when he arrived at the scene, Garcia "point[ed] down the block north bound" on Cypress Avenue at the petitioner, and said, "That's the guy, that's the guy, he robbed me." (T. 322:19-323:8.) Officer Herbert also testified that after he apprehended the petitioner, Garcia confirmed that the petitioner was the one who tried to rob him—testimony to which the petitioner's lawyer did not object. (T. 323:14-23.)

v. *The Petitioner's Grand Jury Testimony*

The prosecution introduced an excerpt of the petitioner's grand jury testimony, in which he admitted to having an interaction with a man at the time and location of the attempted robbery; the petitioner described the encounter as a misunderstanding. (T. 338:5-339:19.) According to the petitioner, on the night of July 4, 2007, he needed some change to buy a slice of pizza; he approached a "gentleman" on Madison Street, and asked if he had any change. (T. 338:4-339:9.) The man "nodded his head, yes, [] told [the petitioner] to wait," and went into a restaurant. (*Id.*) However, when the man came back out of the restaurant, the police arrived and arrested the petitioner. (*Id.*) The petitioner denied waving a knife and threatening the man for money. (*Id.*)

b. *Defense Case*

The petitioner did not call any witnesses.

c. *The Summations*

Both the prosecutor and defense counsel agreed that the central issue in the case was identification. The petitioner's lawyer focused on the victim's inability to identify the petitioner

in court. (T. 346:12-347:7; 352:1-25.) She also pointed to inconsistencies between his testimony and Officer Herbert's testimony, including their different recollections about where the petitioner was apprehended, and the clothes he was wearing at the time. (T.348:1-25.) The petitioner's lawyer also emphasized the lack of forensic evidence in the case, and argued that there was no evidence that the petitioner's fingerprints were on the knife that the police recovered. (T. 356:1-25.)

The prosecutor argued that the evidence of the petitioner's guilt was overwhelming, that Garcia's identification of the petitioner the night of the crime was reliable, and that his 911 call corroborated his testimony.[8] The prosecutor emphasized that while Garcia could not make an in-court identification, he had several opportunities to view the petitioner during the commission of the crime, and identified the petitioner at the scene as the man who tried to rob him. The prosecution also cited the petitioner's concession in the grand jury that he was on Madison Street at the time of the robbery, as well as the officers' recovery of the knife. (T. 365:16-25.)

d. *Verdict*

The jury found the petitioner guilty of Attempted Robbery in the First Degree, Menacing in the Second Degree, and Criminal Possession of a Weapon in the Third Degree. (T. 395:1-396:2.)[9]

e. *Sentencing*

The prosecutor advised Judge Buchter she learned after trial that the petitioner's family had contacted Garcia and threatened him with deportation if he testified. (S. 7:3-19.) Judge Buchter issued an order of protection in favor of Garcia to remain in effect until January 8, 2026.

---

[8] Despite Judge Buchter's earlier correction of the translation of the 911 call, the prosecutor told the jury that Garcia told the 911 operator, "the knife's right here, the knife's right here." (T. 359.) The petitioner's lawyer did not object to this remark.
[9] Judge Buchter dismissed the charge of Criminal Possession of a Weapon in the Fourth Degree. (T. 342:15-17.)

(S. 9:18-20; *see also People v. Vasquez*, 87 A.D.3d 1042, 1043 (2d Dep't 2011), *as amended*

(Jan. 13, 2012).) Judge Buchter imposed concurrent sentences of ten years for the attempted

robbery, three and half to seven years for weapons possession, one year for menacing, and five

years of post-release supervision. (S. 8:12-24.)

## PROCEDURAL HISTORY

1. Direct Appeal

The petitioner, represented by counsel, appealed his conviction to the Appellate Division,

Second Department. (ECF 17-3, at 4.) Appellate counsel argued that the petitioner was denied

due process and effective assistance of counsel when the prosecutor elicited testimony about

Garcia's second confirmatory show-up identification despite failing to provide proper notice

under CPL § 710.30. (*Id.* at 5-6.) Appellate counsel also challenged the petitioner's sentence as

excessive, and argued that the order of protection issued against the petitioner at sentencing

exceeded the eight-year statutory maximum period. (*Id.*)

The petitioner also filed a *pro se* supplemental brief, asserting the following claims: that

there was no foundation under CPL § 60.25 for Officer Herbert's testimony about Garcia's

show-up identification, that the prosecutor committed a *Brady* violation by failing to disclose

that the petitioner's family threatened Garcia with deportation if he testified, that the prosecutor

misquoted the 911 tape during her summation, and that the Spanish interpreter who translated the

911 tape and Garcia's trial testimony was unqualified. (ECF No. 17-3, at 197-216.)

The Appellate Division agreed that the final order of protection exceeded the statutory

maximum and remanded the case for a corrected order, but affirmed the petitioner's conviction.

*Vasquez*, 87 A.D.3d at 1043. Specifically, the court ruled the petitioner's CPL § 710.30 notice

argument was "unpreserved for appellate review," and that any error in admitting the

confirmatory show-up identification testimony was harmless. *Id.* The court rejected the

petitioner's contentions about the 911 tape and the prosecutor's summation remarks on the same

grounds. *Id.* 1043-44. The court also concluded that the petitioner's lawyer provided

"meaningful representation," and the petitioner was "not deprived of the effective assistance of

counsel." *Id.* Finally, the court found that the petitioner's sentence was not excessive. *Id.*

On January 13, 2012, the Appellate Division amended its order, denying the petitioner's

CPL § 60.25 argument as "without merit." *Id.* (*See* ECF No. 17-4, at 108.)

The petitioner was granted leave to appeal to the New York Court of Appeals. (ECF No.

17-4, at 104.) Appellate counsel again argued that the petitioner's lawyer was ineffective

because she did not object to the admissibility of Garcia's confirmatory show-up identification

on notice grounds. The petitioner also filed a *pro se* supplemental brief, again challenging the

admission of Officer Herbert's identification testimony under CPL § 60.25, the prosecutor's

conduct during summations, and her alleged *Brady* violation.

On February 19, 2013, the Court of Appeals affirmed the Appellate Division's decision.

*People v. Vasquez*, 20 N.Y.3d 461 (2013). The court declined to decide whether there was a

CPL § 710.30 violation, but held that even if there was a violation to which defense counsel

failed to object, the lawyer was not ineffective because the "mistake was not so 'egregious and

prejudicial' as to deprive defendant of a fair trial." *Id.* Moreover, "the evidence against [the

petitioner] remain[ed] strong," even without the identification evidence. The court declined to

consider the arguments made in the plaintiff's *pro se* supplemental brief, stating that they were

"not preserved for [] review." *Id.*

2.  440.10 Motion

While his appeal was pending, the petitioner moved *pro se* for an order vacating his

conviction pursuant to CPL § 440.10. The petitioner raised the same arguments he made on
direct appeal: that the prosecutor committed a *Brady* violation, that the Spanish interpreter did
not accurately translate the reasons for Garcia's inability to identify the petitioner at trial, and
that the prosecutor misrepresented the substance of the 911 call at summation. In addition, he
argued that the prosecutor did not correct inconsistencies in the victim's grand jury testimony
and in Officer Herbert's hearing testimony, and that defense counsel was ineffective in cross-
examining Officer Herbert regarding the threats the petitioner's family made to the victim.

Judge Buchter denied the petitioner's application on May 25, 2010. (ECF No. 17-3, at
150-52.) He had previously denied the petitioner's challenge to the Spanish interpreter.[10] Judge
Buchter also rejected the petitioner's *Brady* claim, since the information the prosecutor allegedly
failed to disclose—that the defendant's family threatened Garcia with deportation if he
testified—was not "material" to the defendant's guilt or innocence. (*Id.*) There was, moreover,
no proof that the petitioner was unaware that his family had made the threats, about which the
prosecutor learned only after Garcia testified. (*Id.*) Because there was no *Brady* violation, Judge
Buchter rejected the petitioner's claim of ineffective assistance of counsel. (*Id.*) Judge Buchter
denied the petitioner's remaining claims as procedurally barred by CPL section 440.10(2)(b) as
well as on the merits. (*Id.*)

On January 25, 2011, the Appellate Division denied the petitioner leave to appeal from
the denial of his motion to vacate. The petitioner filed this petition *pro se* on December 9, 2013.

## DISCUSSION

1. Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires that a

---

[10] On April 30, 2010, Judge Buchter denied the petitioner's motion to resettle the transcript. (ECF No. 17-3, at 192-
93.)

federal court reviewing a state prisoner's habeas petition give deference to a state court's decision on the merits. 28 U.S.C. § 2254(a). The federal court may not issue a writ of habeas corpus unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Johnson v. Williams*, 568 U.S. 289, 292 (2013); *Chrysler v. Guiney*, 806 F.3d 104, 116-17 (2d Cir. 2015).

For the purposes of federal habeas review, "clearly established law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" or an "unreasonable application of" clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412-13. The state court's factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).[11]

---

[11] Moreover, a petitioner can seek federal habeas corpus relief only after he exhausts state court remedies, giving the state courts a fair and full opportunity to review the merits of the claim. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). In other words, a petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

2. <u>Analysis</u>

The petitioner raises many of the same arguments that formed the basis of his appeals and

CPL § 440.10 motion, which I will address in turn. For the reasons that follow, I reject the

petitioner's arguments, and his petition is denied in its entirety.

    a. *Brady Violation*

The petitioner argues that the prosecutor withheld information in violation of *Brady v.*

*Maryland*, 373 U.S. 83 (1963); according to the petitioner, the prosecutor knew that the victim

failed to identify him not because of a memory lapse, but because the petitioner's family

threatened the victim with deportation if he testified. (ECF No. 1, at 3.) Judge Buchter rejected

this argument because the information the prosecutor allegedly withheld was not material to the

petitioner's guilt or innocence, and did not constitute a *Brady* violation. (ECF No. 17-3, at 151.)

Under *Brady* and its progeny, the prosecution has "a due process obligation to disclose to

the defendant its knowledge of material evidence favorable to the defendant either because it is

exculpatory or because it can serve to impeach a key witness." *Shabazz v. Artuz*, 336 F.3d 154,

161 (2d Cir. 2003) (quoting *Brady*, 373 U.S. at 87); *see also Chandras v. McGinnis*, No. 01 CIV.

2519 (LBS), 2002 WL 31946711, at *4 (E.D.N.Y. Nov. 13, 2002). "[T]he suppression by the

prosecution of evidence favorable to an accused upon request violates due process where the

evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of

the prosecution." *Shabazz*, 336 F.3d at 161-62. "In order for evidence to be 'material' within

the meaning of *Brady*, a defendant . . . needs to show [] that the evidence could 'reasonably be

taken to put the whole case in such a different light as to undermine confidence in the verdict.'"

*Id.* (citing *United States v. Schwarz,* 259 F.3d 59, 64 (2d Cir. 2001) (internal quotations omitted).

*See also United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001) ("[T]he prosecutor must

disclose evidence if, without such disclosure, a reasonable probability will exist that the outcome of a trial in which the evidence had been disclosed would have been different.").

Here, the state court's decision was neither contrary to nor an unreasonable application of the constitutional right set forth in *Brady*. 28 U.S.C. § 2254(d). The information that the petitioner claims the prosecutor withheld from him—that his own family threatened the victim with deportation if he testified—was neither exculpatory nor favorable to the petitioner in any way. Nor was there any reasonable probability the verdict would have been different had the jury known that the petitioner's family threatened the victim. As a matter of simple common sense, jurors who knew the already convincing evidence of the petitioner's guilt—that he threatened the victim, stayed on the scene, and was immediately arrested—would not have been less likely to convict the petitioner had they also known that the petitioner's family tried to intimidate the victim into silence. There is, moreover, no evidence that the prosecutor withheld this evidence. *See Coppa,* 267 F.3d at 140 (one of the components to a *Brady* violation is that "the government suppressed evidence, either willfully or inadvertently"); *Chandras,* 2002 WL 31946711, at *4 (same). The prosecutor swore in an affidavit that she learned of the family's intimidation efforts only after the victim testified, and the petitioner submitted no facts showing otherwise. (ECF No. 17-3, at 142-43.) Thus, the state court properly concluded that no *Brady* violation had occurred.

b. *CPL § 60.25 Claim*

The petitioner also challenges the trial court's ruling pursuant to CPL § 60.25; the petitioner claims that the real reason for the victim's failure to identify him in court was fear, not lack of recollection. (ECF No. 1, at 3.) Thus, the petitioner argues, Officer Herbert should not

have been allowed to testify that the victim identified the petitioner at the scene, and his testimony constituted improper bolstering of the victim's pre-trial identification. (*Id.*)

Under New York law, testimony of a third party as to an out-of-court identification of a defendant by another is generally inadmissible hearsay. *Mendoza v. McGinnis*, No. 03 CIV. 2598 (DC), 2004 WL 736894, at *8 (S.D.N.Y. Apr. 5, 2004) (citing *People v. Trowbridge*, 305 N.Y. 471 (1953)). CPL § 60.25, however, provides an exception to this rule; under this statute, a police officer is permitted to testify about a witness' prior identification if "a witness testifies that he or she (1) has observed the perpetrator at the time of the crime or some other relevant period, (2) has observed that person on a subsequent occasion under constitutionally permissible circumstances and recognized the person as the one previously seen, and (3) is unable to say 'on the basis of present recollection' whether the defendant is the same person." *People v. Quevas*, 81 N.Y.2d 41, 45 (1993) (citing CPL § 60.25); *see also Stapleton v. Graham*, No. 09-CV-00382 ENV LB, 2010 WL 6599472, at *9 (E.D.N.Y. Sept. 22, 2010), *report and recommendation adopted*, No. 09-CV-0382 ENV LB, 2011 WL 1748734 (E.D.N.Y. May 6, 2011). "In order to lay a proper foundation under CPL 60.25[,] there must be testimony from the witness [at trial or a suppression hearing] which establishes a lack of present recollection of the defendant as the perpetrator." *Quevas*, 81 N.Y.2d at 45. "The evidence must establish a lack of present recollection as a basis for the lack of identification and not a fear of identifying the defendant." *Id.*

As an initial matter, an allegation of improper bolstering does not establish a federal constitutional claim that is cognizable on habeas review. *See, e.g., Heath v. Lavalley*, No. 11-CV-02962 ERK, 2014 WL 4954658, at *2 (E.D.N.Y. Oct. 2, 2014); *Mendoza v. McGinnis*, No.

03 CIV. 2598 (DC), 2004 WL 736894, at *8 (S.D.N.Y. Apr. 5, 2004); *Severino v. Phillips*, No.
05 CIV. 475 (DAB), 2008 WL 4067421, at *11 (S.D.N.Y. Aug. 25, 2008).

Even assuming that there was a basis for habeas review, the record does not support the
petitioner's claim that Officer Herbert's identification testimony was improperly admitted under
CPL§ 60.25.[12] The victim testified that he saw the person who tried to rob him three times:
during the commission of the crime itself, when the assailant walked away from the scene, and
when the perpetrator was in police custody. (T. 285:1-4, 287:1-10; 288:14-18.) The victim also
testified that he could not make an in-court identification because "it had been quite a while since
the [crime]," and that he was "not sure" that the petitioner was the perpetrator "because [the
robbery occurred] like six months or more." (T. 281:4-9; 287:12-16.) There was no evidence at
the trial that the victim's inability to identify the petitioner was the result of anything other than
the passage of time. The threats by the petitioner's family—which the victim revealed only after
his testimony—do not change that result. The victim testified, despite the threats, and did not
say that he was afraid to identify the petitioner. (*See* ECF No. 17-3, at 142-43.) Thus, the trial
court's decision to allow Officer Herbert to testify about the victim's show-up identification was
an appropriate exercise of discretion.

Moreover, even if Officer Herbert's testimony was improper under CPL § 60.25—and it
was not—the petitioner cannot establish the testimony "so infused the trial with unfairness as to
deny due process of law." *Harden v. LaClaire*, No. 07 CIV. 4592 LTS JCF, 2008 WL 783538,

---

[12] The state argues that this claim is both procedurally barred and unexhausted. (ECF No. 13, at 19-20.) While the Court of Appeals found that the issue "was not preserved for its review," the Appellate Division addressed the claim on the merits. *See People v. Vasquez*, 87 A.D.3d 1042, 1044 (2d Dep't 2011), *as amended* (Jan. 13, 2012) ("The defendant's remaining contention with respect to the admission of the show-up identification testimony pursuant to CPL 60.25 is without merit."). Thus, it is not clear that the claim is procedurally barred. Also, the petitioner framed his CPL § 60.25 claim as a violation of state and federal law on both of his direct appeals. (*See* ECF No. 17-3, at 197; ECF No. 17-5, at 94, 104.) Even if the petitioner did not present the entirety of this claim to the state courts, I can reach the claim on the merits to deny it. *See* 28 U.S.C. § 2254(b)(2).

at *13 (S.D.N.Y. Mar. 26, 2008), *report and recommendation adopted*, No. 07CIV4592LTSJCF, 2008 WL 4735231 (S.D.N.Y. Oct. 27, 2008); *see also Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir.1988) ("Erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue *only* where the petitioner can show that the error deprived him of a *fundamentally fair* trial.") (citations and internal brackets omitted); *Mendoza v. McGinnis*, No. 03 CIV. 2598 (DC), 2004 WL 736894, at *9 (S.D.N.Y. Apr. 5, 2004) (admission of improper evidence under CPL § 60.25 does "not amount to a due process violation unless the evidence 'is so extremely unfair that its admission violated fundamental conceptions of justice' and was essential to petitioner's conviction.") The standard for determining whether an error is of constitutional magnitude is "whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985). *Accord Williams v. Smith*, No. 10-CV-03043 JG, 2011 WL 96735, at *18 (E.D.N.Y. Jan. 11, 2011); *Daniel v. Conway*, 498 F. Supp. 2d 673, 682 (S.D.N.Y. 2007).

The evidence against the petitioner was overwhelming. The testimony established that the person who tried to rob the victim with a large knife stayed near the scene, pacing outside the store into which the victim fled until the police arrived and took him into custody. The victim also directed the police to the large knife that the assailant used. The victim confirmed that the police arrested the man who tried to rob him. Finally, the jury heard the petitioner's admission in the grand jury that he was at the scene and had asked a "gentleman" for money. Under the circumstances, Officer Herbert's testimony that the victim confirmed that the petitioner was the

person who tried to rob him while the petitioner was in police custody did not render the trial unfair. *See Harden*, 2008 WL 783538, at *13 (jury's consideration of evidence improperly admitted under CPL § 60.25 would not have violated the petitioner's due process rights given the overwhelming evidence against him); *see also Kanani v. Phillips*, No. 03 CIV. 2534PKCAJP, 2004 WL 2296128, at *19 (S.D.N.Y. Oct. 13, 2004), *report and recommendation adopted*, No. 03 CIV.2534 PKC, 2005 WL 2431416 (S.D.N.Y. Oct. 3, 2005).

    c. *CPL § 710.30 Claim*

The petitioner also contends that he was "deprived of due process" because the pretrial notice, under CPL § 710.30(1)(b), was insufficient.[13]

"It is well-settled that violations of § 710.30 do not amount to a violation of the constitutional right to due process." *Grajales v. Brown*, No. 08-CV-788 (JG), 2008 WL 2313137, at *4 (E.D.N.Y. June 2, 2008); *see, e.g., Jamison v. Griffin*, No. 15CIV6716PKCAJP, 2016 WL 1698350, at *56 (S.D.N.Y. Apr. 27, 2016), *report and recommendation adopted*, No. 15CV6716PKCAJP, 2016 WL 4030929 (S.D.N.Y. July 27, 2016) ("Defective CPL § 710.30 notices do not present a constitutional issue subject to federal habeas corpus review."); *Forino v. Lee*, No. 10-CV-5980 (MKB), 2016 WL 7350583, at *11 (E.D.N.Y. Dec. 19, 2016) (collecting cases); *Arocho v. Walker,* No. 01 Civ. 1367, 2001 WL 856608, at *3 (S.D.N.Y. July 27, 2001) ("Violation of the notice requirement of New York Criminal Procedure Law § 710.30 is purely a matter of state law and raises no constitutional issues for a habeas court to review."). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the

---

[13] CPL § 710.30(1) guarantees a defendant the right to advance notification of a witness's identification testimony and provides, in relevant part, that: "Whenever the people intend to offer at a trial . . . testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such, they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered." *See also Soto v. Donelli*, No. 06 CIV. 5816 SCR LMS, 2010 WL 4242602, at *6 (S.D.N.Y. Apr. 8, 2010), *report and recommendation adopted*, No. 06 CIV. 5816 RO, 2010 WL 4258879 (S.D.N.Y. Oct. 27, 2010).

Constitution, laws, or treaties of the United States." *Dotson v. Ercole*, No. 06 CIV. 7823 (BSJ)(D, 2009 WL 1615997, at *2 (S.D.N.Y. June 9, 2009). Because the "Constitution does not guarantee a right to advance notice of identification testimony," *id.*, the petitioner's claim is denied.

      d. *Prosecutorial Misconduct*

According to the petitioner, the prosecutor misrepresented the substance of the victim's 911 statement to the police during summations, which "effectively reduced the [state's] burden of proof." (ECF No. 1, at 4.) There is no merit to this claim.

As an initial matter, this argument is procedurally barred because the petitioner's lawyer did not object to the prosecutor's characterization of the 911 call. *See* CPL § 470.05(2); *e.g.*, *Davidson v. Cunningham*, No. 16-CV-01125 (JFB), 2017 WL 3738560, at *8 (E.D.N.Y. Aug. 29, 2017) ("New York preservation doctrine provides an independent and adequate ground for decision for the purposes of habeas review."); *Santiago v. Miller*, No. 01-CV-3256, 2003 WL 22284173, at *13 (E.D.N.Y. Aug. 20, 2003) ("New York State's contemporaneous objection rule is an adequate and independent state ground for decision."); *McCall v. Capra*, 102 F. Supp. 3d 427, 445 (E.D.N.Y. 2015) (under New York law, "a claim of prosecutorial misconduct during summation must be preserved for appellate review by a specific objection made at trial."). The Appellate Division and the Court of Appeals deemed the petitioner's claim of prosecutorial misconduct unpreserved for appellate review. *See Vasquez*, 87 A.D.3d at 1043–44 ("The defendant's contention that he was deprived of a fair trial by certain remarks made by the prosecutor during summation is unpreserved for appellate review . . . In any event, the challenged remarks did not deprive the defendant of a fair trial."); *Vasquez*, 20 N.Y.3d at 468

("The arguments made in defendant's pro se brief are not preserved for our review.")[14] Nor has the petitioner shown "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Azaz v. Artus*, No. 09-CV-3857 KAM, 2011 WL 9368971, at *8 (E.D.N.Y. Nov. 2, 2011), *report and recommendation adopted*, No. 09-CV-03857 KAM SMG, 2012 WL 5289519 (E.D.N.Y. Oct. 19, 2012); *see also Powell v. Graham*, No. 10-CV-1961 JFB, 2013 WL 37565, at *8 (E.D.N.Y. Jan. 3, 2013) (same); *Severino v. Phillips*, No. 05 CIV.-475 (DAB), 2008 WL 4067421, at *8 (S.D.N.Y. Aug. 25, 2008) (same).[15]

In any event, there is no evidence that any error in the prosecutor's summation "so infected the trial with unfairness as to make the resulting conviction a denial of [the petitioner's] due process [rights]." *McCall*, 102 F. Supp. 3d at 446 (citations omitted); *see also United States v. Faisal*, 282 F. App'x 849, 850–51 (2d Cir. 2008). In order to obtain habeas relief, the petitioner must show that "he suffered actual prejudice because the prosecutor's comments . . . had a substantial and injurious effect or influence in determining the jury's verdict." *McCall*, 102 F. Supp. 3d at 446; *see also United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) ("[P]rosecutorial misconduct is a ground for reversal only if it causes the defendant 'substantial prejudice.'"). Factors to consider in determining such prejudice include "(1) the severity of the

---

[14] A federal court "will not hear a habeas claim if the state court declined to address the claim due to petitioner's failure to meet a state procedural requirement." *Roberts v. Smith*, No. 10 CIV 4264 BMC, 2010 WL 5288198, at *2 (E.D.N.Y. Dec. 14, 2010). "If a state court has found that a claim is unpreserved for appellate review and then ruled 'in any event' on the merits, this determination constitutes an adequate and independent procedural bar." *Id. See also Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim."); *Guity v. Ercole*, No. 07 CIV. 0728 (RPP), 2007 WL 3284694, at *7 (S.D.N.Y. Nov. 6, 2007) (state appellate decision that the petitioner's contentions were "unpreserved" is "sufficient to establish that it was relying on a procedural bar as an independent ground in disposing of the issue.").
[15] While a successful ineffective assistance of counsel claim could qualify as showing cause of default, as discussed below, there is no merit to the petitioner's claim of ineffective assistance of counsel in this case.

20

prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct." *Davidson v. Cunningham*, No. 16-CV-01125 (JFB), 2017 WL 3738560, at *11 (E.D.N.Y. Aug. 29, 2017). The prosecutor's reference to the 911 call, even if factually incorrect, was brief and isolated. *See id.* at *13 (habeas relief was not warranted because "the prosecutor's statements were brief and constituted only a small portion of the summation" and "did not amount to a significant part of the State's argument") (internal citations and quotations omitted); *Escobar v. Senkowski*, No. 02CIV.8066LAKTHK, 2005 WL 1307939, at *15 (S.D.N.Y. May 26, 2005), *report and recommendation adopted as modified*, No. 02 CIV. 8066 (LAK), 2005 WL 2148712 (S.D.N.Y. Sept. 7, 2005) ("To render a trial fundamentally unfair, [] a prosecutor's improper comments during summation must be more than 'short and fleeting,' but must instead be 'so numerous and, in combination, so prejudicial that a new trial is required.'") (citations omitted). Moreover, any error was further minimized by the trial judge's instruction to the jurors that they had to base their verdict solely on the evidence. (T. 371:8-25.) As noted above, the proof of the petitioner's guilt was strong, "making any potential prejudice from the prosecutor's remarks minimal" at best. *Davidson*, 2017 WL 3738560, at *13; *see also Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994) (holding that the petitioner failed to demonstrate actual prejudice where there was "compelling evidence in the prosecution's case . . . [and] the prosecutor's summation comments were both brief and isolated"). In short, the prosecutor's summation did not deprive the petitioner of a fair trial.

### e. *Ineffective Assistance of Counsel*

The petitioner challenges his trial lawyer's performance, arguing that his lawyer's failure to object to Officer Herbert's testimony about the victim's identification (on both CPL § 710.30

and § 60.25 grounds) and the prosecutor's summation reference to the 911 tape constituted ineffective assistance. (ECF No. 1, at 5.) The petitioner also contends that his lawyer should have requested a "misidentification" charge, and introduced psychological studies about the accuracy of eyewitness identification at trial. (*Id.*)

The state appellate courts properly rejected the petitioner's claims about his lawyer's failure to object to the officer's testimony and the prosecutor's remarks on the merits. *See Vasquez*, 87 A.D.3d at 1043; *Vasquez*, 20 N.Y.3d at 467. Thus, the petitioner cannot satisfy the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) in the first instance, much less show that the state court applied *Strickland* "in an objectively unreasonable manner." *Contant v. Sabol*, 987 F. Supp. 2d 323, 330 (S.D.N.Y. 2013) ("Where, as here, a petitioner seeks habeas review of an ineffective-assistance-of-counsel claim under the test announced in *Strickland*, review is 'doubly deferential.'"). The petitioner's remaining ineffective assistance of counsel claims were not raised on direct appeal and are thus procedurally barred; nonetheless, I deny those claims on their merits. *See Jelinek v. Costello*, 247 F. Supp. 2d 212, 267 (E.D.N.Y. 2003) ("Each substantially independent factual claim made in support of an allegation of ineffective assistance of counsel must be fairly presented to a state court before a federal habeas court may rule upon it.").

A defendant claiming ineffective assistance of counsel must show (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. Under the first prong, the petitioner must overcome the "strong presumption" that counsel's performance fell within "the wide range of reasonable professional assistance" by showing that "counsel failed to act

22

'reasonably considering all the circumstances." *Contant*, 987 F. Supp. 2d at 329; *see also Strickland*, 466 U.S. at 689. In applying this standard, "substantial deference must be accorded to counsel's judgment." *Premo v. Moore*, 562 U.S. 115 (2011). Under the second prong, the petitioner must prove that the "attorney's errors resulted in prejudice to the defendant." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010). "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.*

As the Supreme Court explained, "[s]urmounting *Strickland's* high bar is never an easy task" and "[e]ven under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Id.* The "central concern is not with grading counsel's performance but with discerning whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *United States v. Aguirre,* 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 696-97) (internal quotations omitted).

None of the petitioner's complaints about his lawyer meets this standard. The record demonstrates that the petitioner's lawyer did what she could to undercut the identification evidence. As part of that effort, the attorney challenged the introduction of Officer Herbert's testimony on the ground that there was an insufficient foundation under CPL § 60.25. (T. 320:15-321:9.) She also asked the court to instruct the jury on the evaluation of identification evidence, which the court did. (T. 341:2-342:2, 378:11-381:21.) The lawyer's failure to request additional instructions on identification "does not constitute deficient performance." *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (under New York, "a trial judge who gives a 'general

instruction on weighing witnesses' credibility and who states that identification must be proven beyond a reasonable doubt has made an accurate statement of the law'" and "[t]he decision whether or not to give an expanded instruction is left in the sound discretion of the trial judge.") (citations omitted). Nor was the petitioner's lawyer required to introduce "psychological studies demonstrating the likelihood of misidentification." (ECF No. 1, at 5.) "[I]t is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument[;] [c]ounsel is not obliged to advance every nonfrivolous argument that could be made." *Aparicio*, 269 F.3d at 95. That is particularly true in this case given the circumstances under which the petitioner was arrested—within minutes of the crime, still on the scene, and a short distance away from the large knife used in the crime. Given the strength of the evidence against the petitioner, there is no possibility that the verdict would have been different had counsel made different trial decisions.

In sum, the petitioner failed to show that his lawyer's performance fell below an objective standard of reasonableness or that there is a reasonable probability that the alleged errors affected the outcome of the trial. Accordingly, the petitioner's ineffective assistance of counsel claims are denied.

## CONCLUSION

The petition for writ of habeas corpus is denied in its entirety. The case is dismissed. A certificate of appealability will not be issued. *See* 28 U.S.C. § 2253(c).

**SO ORDERED.**

s/Ann M. Donnelly

Ann M. Donnelly
United States District Judge

Brooklyn, New York
Dated: June 28, 2018

24